IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>DONTE LASHAWN COLE<br>a/k/a "KING", and "DADDY" | No. 2:23-mj-1746<br>**[UNDER SEAL]** |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Fina Spory, being duly sworn, hereby depose and state the following:

1. I am a Special Agent with the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), currently assigned to the Pittsburgh, Pennsylvania office. I have been so employed since January 2019. As part of my duties as an HSI Special Agent, I investigate criminal violations of sex trafficking, attempted sex trafficking and conspiracy to commit sex trafficking of minors and by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591 and 1594; interstate or foreign travel with the motivating purpose of engaging in any illicit sexual conduct, including commercial sex with a minor, in violation of 18 U.S.C. § 2423(b); interstate and foreign travel or transmission in aid of an unlawful activity, including prostitution, in violation of 18 U.S.C. § 1952.

2. This Affidavit is made in support of a criminal complaint charging Donte Lashawn Cole ("COLE"), with violating Title 18, United States Code, Sections 1591(a), 1591(b)(2), 1591(c), 1594(a), and 2 which makes it a crime to attempt to or knowingly recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit by any means, in and affecting interstate commerce, a minor under the age of 18 years, and benefit financially or by receiving anything of value from participation in a venture engaged in commercial sexual acts, knowing and in reckless disregard of the fact, and having had a reasonable opportunity to observe the minor,

that the minor had not attained the age of 18 years and that the minor would be caused to engage in a commercial sex act.

3. Pursuant to Title 18, United States Code, Section 1591(e)(3), commercial sex act is defined as "any sex act, on account of which anything of value is given to or received by any person."

4. Based on my training and experience in these investigations, as well as consultation with others involved in sex trafficking, I know that:

   a. Many individuals involved in the commercial sex trade are known as pimps and prostitutes. A pimp is a person who participates in the business of commercial sex by supervising prostitutes and collecting the proceeds of commercial sex acts, while a prostitute is anyone who provides sexual services in exchange for money or other items of value. These individuals frequently advertise prostitution services on the internet by using computers and other digital media devices that connect to the internet to post advertisements on websites. These advertisements frequently contain nude, semi-nude, and/or provocative photographs of the individuals being advertised. These advertisements often contain prices for services, and language which denotes the type of services which are available, in a coded or abbreviated language. These services are typically advertised by type of service or length of time.

   b. "Johns/Clients" are the customers of prostitutes. The slang term is used among both prostitutes and law enforcement to identify persons who solicit prostitutes.

   c. "Post" is a term used to describe the act of creating and placing an advertisement on an adult or erotic website to attract johns/clients for commercial sex acts.

5. The statements contained in this Affidavit are based upon a joint investigation, involving HSI and the Pennsylvania Office of the Attorney General (PAOAG), information

provided by other sworn law enforcement officers and witnesses, and on my experience and training as a federal agent.

6. Because the Affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation, I have set forth only those facts that I believe are necessary to establish probable cause that evidence of violations of 18 U.S.C. § 1591(a), 1591(b)(2), 1591(c), 1594(a), and 2 have been committed by COLE starting from on or about April 8, 2023, through on or about October 13, 2023. Where statements of others are set forth in this Affidavit, they are set forth in substance and in part.

## **PROBABLE CAUSE**

7. In April of 2023, Pennsylvania Office of Attorney General (OAG) Agents and local law enforcement began conducting surveillance at the Rodeway Inn & Suites, located at 2727 Mosside Blvd. Monroeville, PA ("Rodeway Inn & Suites") due to what law enforcement initially considered possible drug trafficking activity.

8. The Rodeway Inn & Suites is known as a high crime location in the Western District of Pennsylvania where narcotics transactions, drug use, prostitution, and violent crimes occur. Over the last several years, law enforcement has made dozens of arrests for these crimes in this area.

9. On May 9, 2023, PAOAG Agents were conducting surveillance at the Rodeway Inn & Suites, Room 320. While conducting surveillance, a Nissan bearing Ohio Plate GJD9513 ("Nissan") was viewed getting off the Pennsylvania Turnpike. The vehicle was observed going to several locations around the city, eventually arriving at the Rodeway Inn & Suites at approximately 8:15 P.M.

10. The front seat passenger of the vehicle, who was an adult male, was viewed exiting the Nissan and going into the lobby of the Rodeway Inn & Suites. This adult male rented room 302 and was eventually observed entering the room. The adult male was then observed leaving room 302 and entering the Nissan.

11. At this time, an unknown young female was observed by law enforcement exiting the Nissan and walking up and entering room 302 of the Rodeway Inn & Suites. Investigators noted that the female looked very young and subsequently viewed the surveillance footage covering the hotel confirming that the female looked younger than 18 years old.

12. The Nissan was then followed from the Rodeway Inn & Suites to the Sunoco gas station located at 2700 Mosside Boulevard, and eventually followed onto the Pennsylvania Turnpike.

13. Under constant surveillance, the Nissan was followed to the Ohio border. At approximately 9:54 PM, a traffic stop was conducted by the Pennsylvania State Police on the Nissan for vehicle code violations. The driver of the vehicle was identified as COLE and front seat passenger was also identified.

14. At approximately 11:15 PM, investigators conducted a knock and talk at room 320 of the Rodeway Inn & Suites due to the suspicious activity observed. Investigators identified two adult females in Room 320 who will be referred to herein as Adult Victim 1 ("AV1") and Adult Victim 2 ("AV2"), respectively.

15. At this time, Investigators also proceeded to room 302 of the Rodeway Inn & Suites. Agents were let into room 302 by the young female who investigators believe was the same young female observed exiting the Nissan and entering room 302 earlier. This third underage female will be referred to herein as Juvenile Victim ("JV1").

16. While on scene, investigators located condoms, lubrication, cleaning wipes, Vagisil, pregnancy tests, and only a few pieces of clothing in JV1's room (room 302). Similarly, condoms and cleaning wipes (same brand as found in room 302) were found in the room used by AV1 and AV2 (room 320). Investigators advised that within the 24 hours prior to the contact with the occupants of rooms 302 and 320, there were approximately 2-3 individuals viewed coming in and out of the rooms.

17. During discussions with AV1 and AV2, investigators learned that both adult females were involved in commercial sex at the Rodeway Inn & Suites.

18. Investigators were informed by AV1 and AV2 that they would have to send COLE, also referred to as "DADDY" or "KING", images of themselves, and COLE would post these photos in online advertisements for commercial sex. These images would be sent by AV1 and AV2 to COLE's telephone number, which was identified as 216-534-2851.

19. While at the Rodeway Inn & Suites, JV1 acknowledged to investigators that JV1 was 16 years old and was a resident of Ohio (investigators later confirmed JV1's date of birth was July 13, 2006). While at the Rodeway Inn & Suites, investigators also asked JV1 if she had any money and she pointed to a pile of change on the dresser. JV1 was questioned about how she would eat and JV1 stated that her "family" would be back in a couple days and that they had just fed her as she pointed to fast food containers on the nightstand. JV1 stated that until they returned, she would eat out of the vending machine. JV1 was also in possession of two cellular phones.

20. In one of JV1's phones reviewed to date, there were text communications between COLE's phone number and JV1 regarding JV1's involvement in commercial sex transactions and amounts paid for the same. These referenced communications took place between May 1, 2023,

and May 10, 2023, although there are also other similar communication outside of this specific timeframe.

21. Investigators also confirmed through cellular phone location data that the telephone utilized by JV1 travelled from the Cleveland, Ohio to Monroeville, Pennsylvania on May 9, 2023, consistent with the surveillance observations set forth above.

22. Investigators were able to contact JV1's parents, who both reside in Ohio. JV1's parents share custody, and neither was aware that JV1 was in Pennsylvania. JV1 was returned to the custody of her mother in Ohio at 5:58 A.M. on May 10, 2023.

23. During the investigation, AV1 advised investigators that JV1 had introduced AV1 to COLE and, during their initial discussion, JV1 had referred to COLE as JV1's "pimp". Both AV1 and AV2 also indicated that JV1 was provided "special treatment" and it was their understanding from talking with JV1 that JV1 had been with COLE since JV1 was twelve (12) years old.

24. During the course of this investigation, PAOAG Agents conducted an analysis of COLE's call detail records associated with telephone number 216-534-2851. The timeframe of the records encompassed January 03, 2023, through May of 2023. The registered Username on the account was listed as "King Royalty" a known alias of COLE (investigators determined that COLE used this alias for mobile payment services).

25. Based on COLE's call detail record data, PAOAG Agents noted consistent travel to large cities in Ohio, Pennsylvania and the Greater Washington, D.C. area. Based upon the totality of the above gathered information, to include your Affiant's training and experience working human trafficking investigations, your Affiant is aware that this movement and travel along major highways is consistent with individuals engaged in human trafficking.

26. During the course of this investigation, PAOAG Agents also obtained Apple iCloud data associated with COLE's iCloud Account. PAOAG Agents reviewed messages saved in this account which encompassed the timeframe of September of 2022, through April 24, 2023. These communications are similar in nature to the aforementioned communications set for above during the May 1 through May 10, 2023, timeframe and also discuss JV1's involvement in commercial sex transactions and amounts paid for the same.

27. In the iCloud data, there were numerous conversations in COLE's account where messages from JV1's number inquire if COLE had "posted" (meaning posted advertisements) and COLE would confirm that he had posted. It was also apparent that JV1 relied on COLE to provide food for her as there were numerous exchanges where messages from JV1's number sent a food order to COLE. There were also messages between COLE and AV1's number where he refused to provide anything beyond fast food because she hadn't made enough money.

28. A review of conversations between COLE's account and JV1's number also revealed COLE had knowledge that JV1 was a juvenile. Specifically, the following conversation, located in COLE's iCloud records, took place between COLE and JV1 on January 10, 2023:

- COLE: When will u be 18?
- JV1: next year sadly but not to far along away for me.
- COLE: Oh ok get a id and u can still work in Ohio until then
- JV1: Wat do u mean
- COLE: Just get an id and u good for here
- COLE: Do u want to make it happen do that first
- JV1: Ok but I'm saying I can't until I am around that tho I can't Rn I don't think that's possible…
- COLE: Huh call me

29. It should be noted that even after the aforementioned message, COLE continued to direct JV1 to engage in sexual acts for money. A review of location data from JV1's cellular phone determined that JV1 was in Monroeville, PA as far back as April 05, 2023, during the time that

the initial surveillance began on the Rodeway Inn & Suites. Investigators also located two ads for JV1 dated April 8, 2023, posted at 2:12 P.M. and 11:48 P.M. These ads were offering JV1's sexual services for money in the Western District of Pennsylvania, and depicted JV1's face. These ads listed phone number 412-399-7446.

30. The examination of COLE's iCloud data also uncovered numerous telephone numbers and iCloud Accounts with sexual conversations consistent with human trafficking that COLE was having with the users of these accounts.

31. The following accounts were identified as accounts COLE was communicating with during investigators review of COLE's iCloud data:

- +12162595547
- +12165073839
- +12165512386
- +12166126829 (identified as JV1s number)
- +12167779888
- +12343133534
- +13046396407
- +14409906841
- +17245138275
- honeybunny8989@icloud.com

32. Your Affiant researched the aforementioned telephone numbers from COLE's iCloud data and discovered that four of the numbers were used in advertisements online offering sexual acts in exchange for money in various cities, including the number associated with JV1. JV1's number was specifically located on an ad advertising sexual acts for money dated December 12, 2022, in Pittsburgh. This is consistent with the conversations located between COLE's account and JV1's number regarding COLE posting online advertisements on behalf of JV1 and information from both adult victims who told your Affiant in interviews that they were instructed by COLE to send him images of themselves for him to post on the online sex advertisements.

33.     Based upon previously obtained call detail records from COLE's cellular provider, COLE appeared to have travelled to many of the cities these ads appeared in as well. These advertisements were placed in the following cities:

- Cleveland, Ohio
- Akron/Canton, Ohio
- Charlotte, North Carolina
- Pittsburgh, Pennsylvania
- Northern Virginia, District of Columbia
- Tampa, Florida
- Youngstown, Ohio
- Charleston, South Carolina
- Chicago, Illinois
- Washington D.C., District of Columbia

34.     During this investigation, investigators also located two ads posted on May 9, 2023, at 7:58 P.M. and 10:57 P.M. These ads were offering JV1's sexual services for money, and depicted JV1's face, as well as images of her vagina. These ads were posted shortly after JV1 was observed in the Monroeville area on the same day and listed phone number 412-399-7446. Investigators are aware that this number was provided to COLE by JV1 in prior communications when discussing posts for online advertisements for commercial sex.

35.     It should also be noted that two additional advertisements appeared to have been posted on May 9, 2023, at 8:00 PM and 11:08 PM – also shortly before investigators made contact with the victims. Specifically, these advertisements listed phone numbers 412-516-4149 and 412-501-3600 with sexual photos of each adult victim.

36.     In the review of messages between COLE and the JV1's number between November 07, 2022, and April 24, 2023, from COLE's iCloud account, it was also evident that COLE received the proceeds for sex acts that JV1 was engaged in with sex buyers. In many of these conversations, there were discussions between COLE and JV1 about payments for the sex

acts being sent to COLE via the mobile payment application CashApp. By way of example, in one instance JV1 told COLE in relation to a sex buyer "he doesn't know how to use cash app" and COLE then instructs JV1 to tell the sex buyer to pay in cash.

37. On Thursday, October 5, 2023, OAG Intelligence was reviewing advertisements for commercial sex placed online. The sites reviewed are known by investigators to be utilized for human trafficking. In their review, OAG Intelligence discovered additional advertisements for commercial sex with JV1.

38. It was discovered that as recently as October 1, 2023, JV1's photos were observed online in advertisements for commercial sex acts in exchange for money in the Pittsburgh, Pennsylvania area. OAG Intelligence also located an active advertisement for JV1 in the Cleveland, Ohio area. These ads was linked to the previously mentioned advertisements by phone number and photos of the JV1 that were observed in the advertisement. Shortly after discovery, investigators made contact with HSI Cleveland and the Northeast Ohio Human Trafficking Taskforce.

39. Acting in an undercover capacity, Ohio investigators attempted to make contact with JV1 via the posted ad on October 5, 2023, with negative results. On October 6, 2023, JV1 answered the undercover agent from the taskforce. It was discovered that JV1 was located at an Economy Inn Hotel, located at 4751 Northfield Rd. North Randall, OH, in the suburbs of Cleveland, Ohio.

40. During the conversation, JV1 communicated, via text, to commit a commercial sex act with the agent operating in an undercover capacity in exchange for money. Based upon this information, the Ohio Human Trafficking Task Force went to the hotel and rescued JV1. Investigators located condoms, personal lubrication, lingerie within JV1's hotel room and

belongings. Investigators also located a copy of JV1's birth certificate confirming she was a minor and took a copy of the same.

41. JV1, who was positively identified, was forensically interviewed on October 6, 2023. During the conversation, JV1 acknowledged having sex with people in exchange for money. She stated that she did not give the money to anyone and that she keeps the money for herself. She explained that she believes a female paid for the hotel room where she was found. She also stated that she did not know anyone named Donte COLE. Your Affiant knows based on training and experience, that JV1's answer is not unusual in human trafficking investigations, as victims often refuse to identify their trafficker out of either fear or misplaced loyalty associated with a trauma bond that has formed.

42. At one point, the forensic interviewer showed JV1 a photo of COLE. JV1 replied, "I don't know, you already asked me that." The forensic interviewer then clarified with JV1 that this was the only photo she had seen during the interview. JV1 stated, "Ain't that supposed to be that man's name?" Based upon on the context of the conversation, your Affiant avers that the JV1 confirmed with the forensic interviewer that she does in fact know COLE and that it was COLE in the picture.

43. On October 12, 2023, OAG Agents obtained an arrest warrant on state charges for COLE in reference to the aforementioned criminal activity. On October 13, 2023, OAG Agents and members of the Northeast Ohio Human Trafficking Taskforce took COLE into custody at his residence, located at 1508 E 256th Street, Euclid, Ohio 44132.

44. During the warrant service, Agents and Investigators could hear an unidentified female yelling "What is going on?" from the upstairs bedroom. Investigators from Ohio conducted

a protective sweep of the residence and located the JV1, partially nude, in an upstairs bedroom of COLE's residence.

## **CONCLUSION**

45. Based upon the information set forth above, I believe that probable cause exists for the issuance of a Criminal Complaint charging Donte Lashawn Cole with violation of Title 18, United States Code, Sections 1591(a), 1591(b)(2), 1591(c), 1594(a), and 2, which makes it a crime to attempt to or knowingly recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit by any means, in and affecting interstate commerce, a minor under the age of 18 years, and benefit financially or by receiving anything of value from participation in a venture engaged in commercial sexual acts, knowing and in reckless disregard of the fact, and having had a reasonable opportunity to observe the minor, that the minor had not attained the age of 18 years and that the minor would be caused to engage in a commercial sex act.

/s/ *Fina Spory*
Fina Spory
Special Agent
Homeland Security Investigations

Sworn to and subscribed to before, by telephone Pursuant to Fed. R. Crim. P. 4.1(b)(2)(A), me this 15th day of November 2023.

_____
HONORABLE PATRICIA L. DODGE
UNITED STATES MAGISTRATE JUDGE
Western District of Pennsylvania